STATE OF NEBRASKA, APPELLEE, V. JOHN R. HORN, APPELLANT.

357 N.W.2d 437

Filed October 26, 1984.   No. 84-018.

Dalke, Smith & Harris, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

John R. Horn appeals his conviction in a jury trial for burglary. Horn assigns as error the overruling of his motions to suppress and subsequent admission of certain physical evidence and his oral statement to officers.

During the morning of August 26, 1983, Sheriff Ted Henderson and Deputy Daniel Cripe of the Gage County Sheriff's Department investigated an early morning burglary at the administration building of Southeast Community College. A 4- by 2½-foot dollar bill change machine had been removed from the lounge of the administration building through a broken window. Outside the broken window of the administration building, Deputy Cripe found some change, four tire tracks, some "plastic material with maroon paint on it"—apparently body putty from a vehicle—and bloodstained glass. Deputy Cripe also noticed three of the tire tracks were made by regular tires, while the fourth track was made by a

mud-grip tire.

Upon return to his office Sheriff Henderson received a telephone call from Supervisor Eldon Trauernicht of Southeast Community College regarding a possible burglary suspect. Trauernicht told the sheriff that John Horn, a former employee of the college, had earlier mentioned to several coemployees that there were large sums of money in the dollar bill change machine. Trauernicht also gave the sheriff directions to Horn's residence.

Sheriff Henderson and Deputy Cripe drove to Horn's residence, a trailer house. Neither of the uniformed officers had a warrant concerning Horn or the trailer house, and neither officer was acquainted with Horn. Each officer had his weapon "snapped" into his holster.

Arriving at Horn's home around 9:30 a.m., Henderson and Cripe saw a maroon automobile parked in the driveway for the trailer. Cripe noticed that one of the car's tires was a mud-grip. The officers observed blood in the parked car, the car's back window broken out, body putty missing from the car, and change in several places on the ground near the car.

While Sheriff Henderson watched the side door of the trailer, Deputy Cripe knocked on the front door. When Horn appeared in the trailer's doorway and displayed a bandaged hand and foot, Cripe asked whether they might talk. Horn answered "Yes," and, according to Cripe, walked out of his trailer house on his own accord. While walking to the patrol car, Cripe asked that Horn come to the sheriff's office and "speak with us voluntarily." Horn responded that he would. In the patrol car, Horn sat in the right rear seat, while the officers sat in front. Horn was at liberty to leave at any time. In the course of conversation, Cripe asked if Horn would consent to a search of his trailer house, but Horn replied he would "prefer not to." Sheriff Henderson proceeded to take a photograph of the trailer and automobile for use in obtaining a search warrant. At that point Horn told Cripe, "You might as well go ahead and search [the trailer house]." Sheriff Henderson radioed the Beatrice Police Department for a "consent to search" form. A Beatrice police officer arrived with a printed form having blanks to be filled in with information pertaining to a proposed

search. The form was completed by the officers and signed by Horn as follows:

### PERMISSION FOR SEARCH

I, _____ John R. Horn _____ , residing
(Consenting Person)

at _____ 101 W Hoyt _____ Beatrice _____ , do hereby
(Address)

voluntarily authorize ___ Deputy Sheriff Daniel K Cripe ___
(Rank/Name)

of the __ Gage Co. Sheriff __ and any officer accompanying the said _____ Daniel Cripe _____ to search my residence, or other real estate, located at ____ 101 W Hoyt ____ Beatrice ____
(Address)

and/or my motor vehicle(s) (Namely) My _ Maroon _ 1972 _
Color Year

_____ Chevy _____ Nova _____ 2dr _____
Make Model Body Style

Bearing License _____ In-transit _____ presently
Number Year State

parked or located at ____ 101 W Hoyt ____ Beatrice ____
(Address)

AND I FURTHER UNDERSTAND that I have a right to deny the officer(s) permission to search my property.

X /s/ John Horn
Signature of Consenting

WITNESSES:

/s/ Daniel K Cripe ____ Date 8-26-83, 1983 Time: 950am
Signature

/s/ Ted E. Henderson ____
Signature

Before Horn signed the consent form, no officer had drawn his weapon, reached for handcuffs, or told Horn he was under arrest. Also, no officer promised anything in exchange for the consent form signed by Horn. Deputy Cripe testified that although Horn was not under arrest when the consent form was

signed, the deputy read Horn his "Miranda warnings" from a standard prepared form used by officers. Horn acknowledged that he understood each of the *Miranda* rights.

Equipped with the consent form signed by Horn, Sheriff Henderson and Deputy Cripe, after showing the consent form to Mrs. Horn at the front door of the trailer, entered the trailer and found the change machine in a bedroom. Horn had remained outside with an officer of the Beatrice Police Department. Deputy Cripe came out of the trailer, arrested and handcuffed Horn.

Upon arrival at the sheriff's office Horn was again advised of his *Miranda* rights. At approximately 10:50 a.m. Horn signed a form in which he acknowledged that he had been given his *Miranda* rights. At the sheriff's office Deputy Cripe obtained a statement "on tape" in which Horn related that he had stolen the change machine from the community college; had broken the window of his car to load the change machine; had cut his hand when he "punched" out the window during the break-in; and was further injured by the "dollar bill machine changer falling out the window on my foot."

Horn filed motions to suppress physical evidence obtained from his residence and his statement given to Deputy Cripe. Horn, 27 years old, testified at his suppression hearing. According to Horn, Sheriff Henderson and Deputy Cripe knocked on the front door of his trailer and "told me to come outside the trailer, that they wanted to ask me some questions." Horn then left his trailer without any exertion or further exhortation from the officers. Horn also testified there were no threats or promises made regarding the consent form he signed. Horn further acknowledged that he "freely and voluntarily" gave the signed "PERMISSION FOR SEARCH" form to the officers.

The district court overruled Horn's motions to suppress. As a result of a jury trial, Horn was convicted of burglary.

Horn contends that he was unlawfully arrested before the officers searched his residence. Further, Horn alleges error in overruling his motions to suppress physical evidence extracted from his home and his oral statement, the latter alleged to be an exploitation of an illegal arrest.

Horn contends that the officers made an illegal, warrantless arrest inside his trailer house, contrary to *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). In *Payton* the U.S. Supreme Court held that a warrantless arrest inside a suspect's home, absent exigent circumstances, violates the fourth amendment to the U.S. Constitution. Was Horn arrested before the officers searched his residence? Whether the prohibition of *Payton* applies depends upon when and where Horn's arrest took place.

"[I]t is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home." *United States v. Johnson*, 626 F.2d 753, 757 (9th Cir. 1980).

In *State v. Longa*, 211 Neb. 356, 318 N.W.2d 733 (1982), we concluded that a person is "seized" and under arrest if, in view of all the circumstances surrounding the encounter with the officers, a reasonable person believes he is not free to leave.

*United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980), supplies criteria for determining whether a person is under arrest, namely:

> [A] person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." [Citation omitted.] As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.
>
> . . . .
>
> . . . [A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. [Citations omitted.] In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Id.* at 553-55.

[W]hether an arrest has occurred depends upon an objective, not subjective, evaluation of what a person innocent of a crime would have thought of the situation, given all of the factors involved. When an arrest has occurred depends in each case upon an evaluation of all the surrounding circumstances. Primary among these is a determination of whether or not the defendant was free to choose between terminating or continuing the encounter with the law enforcement officers.

*United States v. Johnson, supra* at 755.

Thus, in determining the point at which an arrest has occurred, a court must look to the totality of the circumstances of a law enforcement officer's encounter with an individual and must view such circumstances objectively under a "reasonable person" standard and the pertinent factors illustrated in *United States v. Mendenhall, supra*. See, also, *People v. Pancoast*, 659 P.2d 1348 (Colo. 1982).

When officers encountered Horn at the trailer house's doorway, there was no official conduct invading or reaching inside Horn's home. The doorway contact with Horn consisted of identification and a request for further discussion. All testimony negatived any display of weapons, physical contact or "touching" by the officers, and any other official force to effect Horn's exit from the trailer house or produce his presence in the patrol car. Horn has never disputed his ability or liberty to discontinue contact with the officers, either within or without his home, before Deputy Cripe placed Horn under arrest upon discovery of the change machine. Further, nothing indicates

that exclusion of the officers from Horn's home was virtually impossible or impracticable, that is, no dilemmas of Horn. In Horn's doorway encounter with the officers, there was no derogation of the domiciliary dignity of Horn's home. Without some form of official conduct intruding into Horn's trailer house, there was no seizure or arrest of Horn within his home. The "archetype of the privacy protection secured by the Fourth Amendment" remained inviolate. See *Dorman v. United States*, 435 F.2d 385, 389 (D.C. Cir. 1970).

As expressed by the U.S. Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968): "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

Viewing all the circumstances of Horn's initial contact with the officers, we cannot, and the trial court did not, conclude that a reasonable person would have believed that he was prevented from leaving the presence of the officers, that is, a reasonable person would not have believed he was "seized" or under arrest. " 'Factfindings by the trial court on a motion to suppress will not be overturned on appeal unless clearly wrong.' " *State v. McCarthy, ante* p. 246, 249, 353 N.W.2d 14, 16 (1984). See, also, *State v. Hamilton*, 217 Neb. 734, 351 N.W.2d 63 (1984). Therefore, Horn's contention that he was illegally arrested before he signed the consent form is without merit.

Horn next contends that physical evidence seized from his home should have been suppressed because consent to the search was not voluntarily given. It is beyond dispute that the right to be free from unreasonable search and seizure, guaranteed by the fourth amendment to the U.S. Constitution and by article I, § 7, of the Nebraska Constitution, can be waived by the voluntary consent of the citizen. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). "The consent required to support a consensual search must be essentially free and unconstrained choice and not the product of a will 'overborne.' " *State v. Walmsley*, 216 Neb.

336, 340, 344 N.W.2d 450, 453 (1984). See, also, *Schneckloth v. Bustamonte, supra.* Whether consent to a search is voluntary must be determined from the totality of the circumstances. *State v. Garcia,* 216 Neb. 769, 345 N.W.2d 826 (1984).

After indicating to the officers that he did not want his home searched, Horn recanted and told the officers that they "might as well go ahead and search." The "PERMISSION FOR SEARCH" form signed by Horn contains an express provision that the signatory (Horn) could deny the officers permission to search the signatory's property. The record does not reflect any external coercion or official pressure brought to bear on Horn for his signature on the form. To the contrary, the record does show that no threats or promises were made in obtaining Horn's consent to the search. The evidence supports the trial court's finding that Horn voluntarily consented to the search of his home. Cf. *State v. McCarthy, supra.*

Finally, Horn contends that his statement given at the sheriff's office was an exploitation of an illegal arrest. Cf. *State v. George,* 210 Neb. 786, 317 N.W.2d 76 (1982) (defendant's statement in temporal proximity to illegal arrest is inadmissible). Finding the change machine inside Horn's trailer house pursuant to an authorized search and the other circumstances pointing to Horn's commission of the burglary were a permissible foundation for reasonable or probable cause to arrest Horn. A peace officer may arrest without a warrant if the officer has reasonable cause to believe that the person to be arrested has committed a felony. See, Neb. Rev. Stat. § 29-404.02 (Reissue 1979); *State v. Harrison, post* p. 532, 357 N.W.2d 201 (1984).

Therefore, Horn's arrest outside his trailer after discovery of the change machine was valid. Horn's argument that his statement to Deputy Cripe was an exploitation of an illegal arrest has no merit.

The questioned physical evidence obtained from Horn's home and statement given by Horn were admissible.

The judgment of the district court is in all respects correct and is affirmed.

AFFIRMED.