STATE OF NEBRASKA, APPELLANT, V. JEANETTE J. MANNS, ALSO
KNOWN AS JEANETTE GAMBEL, ALSO KNOWN AS JEANETTE
WORKMAN, AND JAMES W. MANNS, JR., APPELLEES.

370 N.W.2d 157

Filed July 5, 1985.   No. 85-261.

Stephen E. Sturek, Jr., for appellant.

David S. Lathrop, Jr., of Lathrop, Albracht & Lathrop, for
appellees.

KRIVOSHA, C.J.

This appeal is brought before a single judge of the Supreme
Court of Nebraska pursuant to the provisions of Neb. Rev.
Stat. § 29-824 (Cum. Supp. 1984) for the sole purpose of
reviewing whether the action of the district court for Sarpy
County, Nebraska, suppressing certain physical evidence and
statements was in error. The district court found that the
physical evidence was the product of a nonconsensual, illegal
search and that the statements thereafter made were the
"fruits" of that search. Accordingly, the district court sustained
motions to suppress both the evidence and the statements.

The evidence as produced by the State disclosed that on
December 4, 1984, Det. Sgt. William Gumm of the Bellevue
Police Department received information that the Omaha Police
Department believed that stolen property could be found at the
residence of the appellees, Jeanette and James Manns.
Detective Gumm and four other police officers went to the
Manns residence at about 1:15 on the afternoon of December 4,
1984. They did not attempt to obtain a search warrant before
going to the Manns residence, though the evidence does not
indicate the existence of any exigent circumstances. Gumm
testified that the police knew that the house belonged to the
Mannses. Eventually, all five officers entered the house through
the front door. The door was answered by an individual
identified as a friend of the residents. Upon entering the house
the officers proceeded to search the main floor. The officers

maintain that they were simply attempting to secure the area. Shortly after the officers entered the home and began their search of the first floor, Mrs. Manns entered. The officers explained that they were investigating the theft of two TVs and two VCRs. According to Gumm, Mrs. Manns advised him that she had recently purchased a TV and VCR from a friend. There is a significant conflict in the evidence regarding what transpired thereafter. Gumm maintains that he merely asked if he could see the items and that Mrs. Manns said he could and escorted him to the basement, where the items were kept. Mrs. Manns, the only other witness to testify at the suppression hearing, said she told Detective Gumm that she had recently purchased a TV and VCR. He then said to her, "Show them to me." Mrs. Manns then went through the kitchen and started down the stairs to the basement and was followed by the officers. In the basement the officers found and seized a TV and a VCR with serial numbers identical to the serial numbers of the items reported as stolen.

Mrs. Manns was asked to come down to the Omaha police headquarters to give a statement. Upon arrival at the police station Mrs. Manns was asked to give a statement, though she was not given any *Miranda* warnings. While she was not advised that she was under arrest, the evidence makes it clear that she was not free to refuse to accompany the officers or free to leave the police station until she had given a statement. She was thereafter released and arrested 9 days later by Bellevue police officers, when she was formally charged with the offense of theft by receiving stolen property over $300 in value but less than $1,000, in violation of Neb. Rev. Stat. §§ 28-517 (Reissue 1979) and 28-518(2) (Cum. Supp. 1984). Upon her arrest and after being advised of her *Miranda* rights, Mrs. Manns gave a written statement to the officers in which she maintained that she had purchased the equipment from a friend. Subsequently, Mr. Manns was arrested and, after being advised of his *Miranda* rights, gave a written statement similar to that given by Mrs. Manns.

The State maintains that the district court erred in suppressing the physical evidence obtained in the search of the Manns residence because the search was with the consent of

Mrs. Manns, and further erred in suppressing the written statements of both Mr. and Mrs. Manns made several weeks later. During the course of argument to the one-judge court, counsel for Mr. Manns conceded that there was no basis for suppressing his statement. That leaves us, then, with the questions of whether the district court erred in suppressing the physical evidence and the subsequent written statement given by Mrs. Manns. I shall address them in that order.

While the right to be free from unreasonable searches and seizures is guaranteed by the fourth amendment of the U.S. Constitution and by Neb. Const. art. I, § 7, that right may be waived voluntarily by the citizen. See, *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *State v. Horn*, 218 Neb. 524, 357 N.W.2d 437 (1984). In order, however, for the consent to be effective, it must be a free and unconstrained choice and not the product of a will "overborne." See *State v. Horn, supra*. The determination of whether consent to a search is voluntarily given must be based upon the totality of the circumstances and is a question of fact. See, *State v. Horn, supra*; *State v. Ferrell*, 218 Neb. 463, 356 N.W.2d 868 (1984). Such a determination will not be set aside on appeal unless clearly erroneous, *State v. Ferrell, supra*.

The evidence is clear that the entry into the home was in violation of the Mannses' fourth amendment rights. The friend had no common authority over the premises and could not have given permission. See, *United States v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974); *State v. Billups*, 209 Neb. 737, 311 N.W.2d 512 (1981). Unless it can be said that Mrs. Manns' "consent" was thereafter voluntarily obtained and not coerced, the decision of the district court finding that Mrs. Manns' fourth amendment rights were violated is correct. The district court concluded that when an individual is confronted by five police officers in the process of searching her home and commanded to display equipment, her "consent" is not voluntarily given but, rather, is coerced. Had I been the trier of fact, I might have reached a contrary conclusion under the facts in this case. Mrs. Manns never denied she was in possession of the items and at all times maintained she had purchased them. Granting the officers permission to see the items would be

wholly consistent with the claim that she purchased the items, and therefore it appears reasonable to believe she voluntarily gave consent. The district court, however, found to the contrary. I cannot as a matter of law say that the district court was in error in reaching the conclusion it reached. Being unable to say that it was clearly in error, I am therefore bound to accept the findings of fact made by the district court. To that extent, therefore, the district court's decision suppressing the evidence obtained in the basement of the Mannses' home must be affirmed.

That leaves us, then, with the question concerning the statement made by Mrs. Manns some 2 weeks after the search and her initial oral statement. In *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), the U.S. Supreme Court held that evidence and witnesses discovered as a result of a search in violation of the fourth amendment must be excluded from evidence as "fruit of the poisonous tree." Recently, in the case of *Oregon v. Elstad*, 470 U.S. ____, 105 S. Ct. 1285, 1291, 84 L. Ed. 2d 222 (1985), the U.S. Supreme Court noted that "[t]he *Wong Sun* doctrine applies as well when the fruit of the fourth amendment violation is a confession." It is clear, however, that not all evidence is "fruit of the poisonous tree" merely because it would not have come to light except for the illegal action of the police. See *Wong Sun v. United States, supra.*

In *Brown v. Illinois*, 422 U.S. 590, 603, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975), the U.S. Supreme Court said:

> The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered.

In *State v. Smith*, 209 Neb. 505, 308 N.W.2d 820 (1981), this court adopted five factors to be viewed in evaluating what

evidence is "fruit of the poisonous tree." The five factors are:

> (1) The administration of the *Miranda* warnings to the defendant prior to the statement; (2) The temporal proximity of the arrest and the confession; (3) The intervening circumstances between the initial detention and the challenged statements; (4) The purpose and flagrancy of the official misconduct; and (5) The voluntariness of the statement must be established.

*Id.* at 510, 308 N.W.2d at 823. We then went on to hold that a confession given 27 hours after an illegal arrest and after *Miranda* warnings were read was admissible under the doctrine set out in *Wong Sun.*

An examination of the facts in this case in light of those five elements would seem to indicate that the statements are admissible. Mrs. Manns was properly advised of her rights prior to giving the written statement on December 13, 1984. The search occurred some 9 days prior to her statement, at a time when she was not in custody.

Finally, the evidence discloses that Mrs. Manns executed a "RIGHTS ADVISORY FORM" which affirmatively shows that the statement was voluntarily given. Although the initial search was warrantless, it does not appear that the officers used force, nor did they attempt to enter the house pursuant to any manner of subterfuge or deceit. Therefore, their actions were not the type of "conscious or flagrant misconduct" with which the fourth factor of *State v. Smith, supra,* was concerned. See *Rawlings v. Kentucky,* 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980). It would therefore appear that the statement given by Mrs. Manns is not the fruit of an illegal search and not in violation of her fourth amendment rights.

Nor does it appear that an argument could be made that the statement contravened Mrs. Manns' fifth amendment rights. In *Oregon v. Elstad, supra,* 105 S. Ct. at 1298, the U.S. Supreme Court recently held "that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." In so holding, the Court in *Elstad, supra,* 105 S. Ct. at 1298, said:

> Far from establishing a rigid rule, we direct courts to avoid

one; there is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda*, was voluntary. The relevant inquiry is whether, in fact, the second statement was also voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative. We find that the dictates of *Miranda* and the goals of the Fifth Amendment proscription against use of compelled testimony are fully satisfied in the circumstances of this case by barring use of the unwarned statement in the case in chief. No further purpose is served by imputing "taint" to subsequent statements obtained pursuant to a voluntary and knowing waiver.

It would therefore seem clear that the statement obtained from Mrs. Manns after she received appropriate *Miranda* warnings should not have been suppressed. The decision of the district court is in part affirmed and in part reversed.

AFFIRMED IN PART, AND IN PART REVERSED.