STATE OF NEBRASKA, APPELLEE, V. CLAIR JUHL, APPELLANT.
449 N.W.2d 202

Filed December 15, 1989.   No. 88-586.

Gary L. Hogg, Buffalo County Public Defender, for appellant.

Clair Juhl, pro se.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

On May 19, 1988, a jury, in the district court for Buffalo County, convicted Clair Juhl of felonious theft. See Neb. Rev. Stat. § 28-511(1) (Reissue 1985) (theft by unlawful taking) and Neb. Rev. Stat. § 28-518(2) (Reissue 1985) (grading of theft offenses; property valued at more than $300, but less than $1,000). Later, after receiving evidence at a hearing concerning Juhl's prior felony convictions, the district court determined that Juhl was a habitual criminal and sentenced Juhl to imprisonment for not less than 10 nor more than 20 years, pursuant to Nebraska's habitual criminal act, Neb. Rev. Stat. §§ 29-2221 et seq. (Reissue 1985).

## ASSIGNMENTS OF ERROR

Juhl contends that the district court erred in (1) overruling his motion to suppress physical evidence obtained by a search of Juhl's person contrary to constitutional protection against an unreasonable search and seizure, (2) receiving certain photographs as evidence in Juhl's trial, (3) allowing the State to introduce into evidence two jackets allegedly worn by Juhl when he was apprehended, and (4) receiving at the sentence hearing documentary evidence of Juhl's previous felony convictions for which the dates in the documents did not coincide with the dates alleged in the information filed against Juhl.

## THE WAYFARER INCIDENT

At approximately 2 a.m. on December 14, 1987, the Buffalo County Sheriff's Department received a call from a private citizen who stated that a theft from a semi-trailer rig was taking place in the parking lot of the Wayfarer Motel, which is located

near the Elm Creek interchange for Interstate 80.

Deputy Sheriff Steven Jensen, responding to the citizen's call, proceeded to the Wayfarer and, when he was driving into the Wayfarer's parking lot, observed a semi which consisted of a cab-over tractor and a flatbed trailer. On the trailer were four truck chassis and cab units, stacked piggyback. Jensen drove his cruiser toward the semi and activated the high beams of the cruiser's headlights to see if anyone was near the semi. The high beams illuminated a man who was stepping away from the semi. As the man turned toward Jensen's approaching cruiser, he brought his hands above his head and then dropped his hands to his side as he proceeded toward Jensen's cruiser. Jensen stopped his cruiser, got out, and walked to the man, whom he recognized as Clair Juhl, who had had prior contacts with the sheriff's department.

After Jensen told Juhl that there had been a report of a theft from the semi, Juhl stated that he was drunk and en route to his room at the Wayfarer. When Jensen asked why Juhl was in the area of the semi, Juhl replied, "I'm a man." Jensen suggested that Juhl head to his room at the Wayfarer. During this conversation, Officer Duane Bond of the Elm Creek Police Department arrived at the scene. While Juhl was walking to a motel stairway, Jensen and Bond investigated the semi but found no evidence of criminal activity. As the officers were standing in the parking lot near the semi and discussing the situation, Jensen observed an Oldsmobile Toronado, with its trunk open, about 50 feet from the semi. Both Jensen and Bond approached the Toronado and observed in its open trunk three large industrial-type batteries.

Jensen walked back to the semi and noticed that three batteries were missing from one of the cab units on the trailer and that the battery terminal nuts and cables had been removed from another unit on which the batteries had been pulled forward. The batteries which were still attached to the chassis and cab units on the trailer were similar to those in the Toronado's open trunk.

Juhl, who had been standing by the motel during the officers' investigation, walked toward Jensen and met him in the middle of the parking lot. At this time, Jensen noticed that

the right pocket of the jacket worn by Juhl was sagging and hanging lower than the left side of Juhl's jacket, indicating that a heavy object, perhaps a weapon, was contained in the jacket's right pocket. Jensen asked Juhl what was in the jacket's pocket. Juhl raised his right arm and said, "[C]heck." Jensen reached into Juhl's right jacket pocket and extracted a socket wrench and five bolt-type metal nuts.

Bond took the metal nuts and, on examining the batteries on the chassis and cab units located on the semi, determined that the metal nuts taken from Juhl's jacket pocket were the same type as the battery nuts for the equipment being hauled on the semi's trailer.

While Bond was inspecting the batteries on the semi's trailer, Jensen asked Juhl if he knew who owned the Toronado which had its trunk open. Juhl answered that the car was owned by his friend but that Juhl had been using it. After Bond told Jensen about the results of Bond's examination of the equipment on the semi's trailer, Jensen arrested Juhl for theft, and Juhl was immediately transported to the Buffalo County Detention Center.

## SUPPRESSION HEARING

Pursuant to Neb. Rev. Stat. § 29-822 (Reissue 1985), Juhl filed a pretrial motion to suppress the physical evidence obtained from his person, namely, the battery nuts and related equipment. In his suppression motion, Juhl alleged that the search of his person was conducted without a search warrant or probable cause and, consequently, was an unreasonable search contrary to constitutional safeguards. See, U.S. Const. amends. IV and XIV; Neb. Const. art. I, § 7. On the basis of the circumstances surrounding the search of Juhl, as set forth above in this opinion, the trial court overruled Juhl's suppression motion.

## THE INFORMATION

In its amended information against Juhl, which was filed on January 15, 1988, the State charged Juhl with felony theft and alleged that on May 7, 1980, Juhl was convicted in the district court for Buffalo County on three felony charges (terroristic threats, use of a firearm to commit a felony, and possession of a

firearm by a felon), was sentenced on February 8, 1982, and thereafter was delivered to the Nebraska Penal and Correctional Complex, where he served the sentences imposed. Also, the State alleged that on November 27, 1985, in the U.S. District Court for the District of Nebraska, Juhl was convicted of felonious possession of a firearm and, on January 3, 1986, was delivered to the federal penitentiary at Terre Haute, Indiana, where he served the federal sentence. The case or file numbers for each previous prosecution, conviction, and sentence in the state and federal courts appeared in the allegations for imposition of the habitual criminal penalty.

## JUHL'S TRIAL

At Juhl's trial, the State offered 11 photographs as evidence. The photographs mainly depicted locations of objects in the Wayfarer parking area, such as the Toronado with its open trunk and the vehicles on the semi's trailer. Concerning the photographs, the photographer testified that each photograph was an accurate depiction of the place or object in the photographs taken on December 14 and 15, 1987. On the basis of foundation and relevance, Juhl objected to the introduction of each photograph. The court overruled Juhl's objections to the photographs.

The State also offered two jackets which the State claimed Juhl was wearing when he was apprehended at the Wayfarer. Tim Sutherland, chief corrections officer of the Buffalo County Detention Center, testified that a property inventory is taken for every inmate who is admitted to the detention center and that as one of his duties, Sutherland maintains all the detention center's records. Although Sutherland was not present when Juhl was brought into the detention center, the detention center's records include an itemized inventory of all Juhl's property on his person when he was admitted to the detention center. Sutherland read a list of Juhl's inventoried property, which included the jackets. When Sutherland was handed the two jackets, he testified, without objection, that the jackets had been brought to court from the detention center's property room where the jackets had been kept in a property container marked "Clair Juhl." Sutherland further testified

that he is in the property room on a daily basis and that he had seen the jackets in the property room since Juhl's admission to the detention center. When the State offered the jackets as exhibits, Juhl objected "for the reason this officer [Sutherland] wasn't present when [the two jackets] were allegedly taken from the defendant and has no personal knowledge as to the identity or the ownership thereof." The court overruled the objection and received the two jackets into evidence.

At the conclusion of the evidence and after instruction, on May 19, 1988, the jury found Juhl guilty of felony theft.

## THE ENHANCEMENT HEARING

At the sentence hearing on June 20, 1988, and to show that Juhl could be sentenced as a habitual criminal under the Nebraska habitual criminal act, §§ 29-2221 et seq., the State requested permission to amend the information instanter and by interlineation or to defer such amendment until completion of the State's proof for imposition of the enhanced penalty. The proposed amendments related to the date alleged for previous sentencing on the state convictions and the date for Juhl's conviction in federal court. Regarding the previous convictions and sentences in the state court, the information contained the allegation that Juhl was sentenced on February 8, 1982, for his convictions of terroristic threats, use of a firearm to commit a felony, and possession of a firearm by a felon, whereas sentencing actually occurred on February 5, 1982. Concerning Juhl's felony conviction and sentence in federal court, the information's allegations indicated that November 27, 1985, was the date of Juhl's conviction, whereas the real date for Juhl's federal conviction was November 14, 1985. The court overruled Juhl's objection to the State's proposed amendments. The State's proof at the enhancement hearing established that Juhl's sentencing in the state court occurred on February 5, 1982, as reflected in the court's records offered as exhibits concerning Juhl's previous convictions and sentences in state court and, similarly, established Juhl's federal conviction on November 14, 1985, and sentence in federal court on November 27, 1985, as reflected by court records offered as exhibits. On the basis of the evidence at the enhancement hearing, the court

found that the requirements were satisfied for imposition of the enhanced penalty available under the Nebraska habitual criminal act and sentenced Juhl to imprisonment for not less than 10 nor more than 20 years, with credit for Juhl's jail time in awaiting trial on the theft charge and sentencing after conviction.

STANDARD OF REVIEW—SUPPRESSION HEARING

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Blakely,* 227 Neb. 816, 420 N.W.2d 300 (1988). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed witnesses testifying regarding such motion to suppress. *State v. Blakely, supra.* See, also, *State v. Abdouch,* 230 Neb. 929, 434 N.W.2d 317 (1989).

If police have acted without a search warrant, the State has the burden of proof that the search was conducted under circumstances substantiating the reasonableness of such search or seizure. *State v. Vrtiska,* 225 Neb. 454, 406 N.W.2d 114 (1987).

Pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and *Sibron v. New York,* 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968), Juhl argues that Deputy Jensen was limited to conducting only a pat-down search of Juhl. In *Terry v. Ohio, supra,* the U.S. Supreme Court held that in appropriate circumstances, even without probable cause, an officer "is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of . . . persons in an attempt to discover weapons which might be used to assault him." 392 U.S. at 30. In *Sibron v. New York, supra,* a companion case to *Terry,* the Court determined that an incident search without probable cause "may not precede an arrest and serve as part of its justification." 392 U.S. at 63. However, the Court recognized that pursuant to *Terry,* an initial incident search may be justified if the officer has

reasonable grounds to believe a person may be armed.

Juhl argues that, in view of *Terry* and *Sibron*, Jensen did not possess a reasonable basis for detaining and searching Juhl, and, even if a search were justified, the officer was limited to a pat-down search of Juhl's jacket and was not constitutionally entitled to intrude into the jacket's pocket to extract the physical evidence.

It is certainly true that, as Juhl maintains, pursuant to the 4th and 14th amendments to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, a citizen has a right to be free from an unreasonable search and seizure. Furthermore, as *Terry* and *Sibron* indicate, an officer must have a reasonable basis for even a brief investigatory stop and search of an individual.

However, the question whether Jensen had the requisite reasonable basis to make a *Terry* stop and search need not be answered, because the right to be free from unreasonable search and seizure, guaranteed by the fourth amendment to the U.S. Constitution and by article I, § 7, of the Nebraska Constitution, can be waived by the consent of the citizen. *State v. Horn*, 218 Neb. 524, 357 N.W.2d 437 (1984).

The consent required to support a consensual search must be essentially free and unconstrained choice and not the product of a will "overborne" and a critically impaired "capacity for self-determination." *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *State v. Horn, supra.* Cf. *United States v. Watson*, 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976). Whether a person consented to a search is determined from all the circumstances surrounding the search. *Schneckloth v. Bustamonte, supra*; *State v. Horn, supra*; *State v. Van Ackeren*, 194 Neb. 650, 235 N.W.2d 210 (1975). Any consent to a search must be voluntary and not the result of duress or coercion—express, implied, physical, or psychological. *Schneckloth v. Bustamonte, supra*; *United States v. Fike*, 449 F.2d 191 (5th Cir. 1971); *Phelper v. Decker*, 401 F.2d 232 (5th Cir. 1968).

There is no evidence that any officer used or directed force against Juhl in obtaining the physical evidence from Juhl. When Deputy Jensen asked what Juhl had in his jacket's

pocket, Juhl raised his right arm and responded, "[C]heck"—an unequivocal invitation for Jensen's search of Juhl's jacket. Juhl's right to be free from an unreasonable search and seizure was not violated, since Juhl consented to the search by Jensen, and, thus, the trial court's overruling of Juhl's motion to suppress was correct.

### ADMISSIBILITY OF PHOTOGRAPHS AND JACKETS

Admission or exclusion of photographs as evidence is within the discretion of a trial court, whose evidential ruling on the photographs will be upheld on appeal unless the trial court abused its discretion. *State v. Birge*, 215 Neb. 761, 340 N.W.2d 434 (1983).

In addition to questions of admissibility regarding photographs as evidence, relevancy of offered evidence and exclusion of relevant evidence involve a trial court's discretion. Thus, whether a particular item of evidence has probative value and is, therefore, relevant, see Neb. Evid. R. 401 (Neb. Rev. Stat. § 27-401 (Reissue 1985)), or whether an item of evidence, although relevant, is excludable on account of the danger of unfair prejudice, confusion of issues, misleading the jury, undue delay in the proceedings, waste of time, or needless presentation of cumulative evidence, see Neb. Evid. R. 403 (Neb. Rev. Stat. § 27-403 (Reissue 1985)), may depend on a trial court's exercise of judicial discretion.

In *Wachtel v. Beer*, 229 Neb. 392, 405, 427 N.W.2d 56, 64 (1988), this court characterized "abuse of discretion":

A judicial abuse of discretion does not denote or imply improper motive, bad faith, or intentional wrong by a judge, but requires the reasons or rulings of a trial judge to be clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition through a judicial system. *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986); *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986).

The preceding characterization or description of "abuse of discretion" is somewhat incomplete, for the description does not contain reference to choice as a component of "discretion."

In its ordinary meaning, discretion is

> power of decision: individual judgment . . . power of free decision or choice within certain legal bounds . . . *specif*: the latitude of decision within which a court or judge decides questions arising in a particular case not expressly controlled by fixed rules of law according to the circumstances and according to the judgment of the court or judge . . . ability to make decisions which represent a responsible choice and for which an understanding of what is lawful, right, or wise may be presupposed.

Webster's Third New International Dictionary, Unabridged 647 (1981).

In *Spalding v. Spalding*, 355 Mich. 382, 384, 94 N.W.2d 810, 811-12 (1959), the Supreme Court of Michigan noted: "[A]n abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations."

Consequently, a judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. See, *State ex rel. Simpson v. Vondrasek*, 203 Neb. 693, 279 N.W.2d 860 (1979); *Spalding v. Spalding, supra*; K.C. Davis, Discretionary Justice: A Preliminary Inquiry (1969); Rosenberg, *Judicial Discretion*, 38 The Ohio Bar 819 (1965).

In Juhl's case, the photographs not only depicted the setting at the scene of the theft but corroborated the officers' accounts of their investigation and encounter with Juhl. Therefore, the photographs were relevant. See Rule 401. Moreover, Juhl has failed to demonstrate how he was unfairly deprived of a substantial right by the trial court's determination regarding the photographs' admissibility. We find no abuse of discretion in the trial court's admitting the photographs as proper evidence to prove the theft charge against Juhl.

Next, Juhl argues that the jackets were improperly admitted

because they were introduced through a witness, Sutherland, who had no personal knowledge of what Juhl was wearing on admission to the detention center. According to Juhl, Sutherland's testimony concerning the two jackets is inadmissible under Neb. Evid. R. 602 (Neb. Rev. Stat. § 27-602 (Reissue 1985)), which provides in part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."

On admission to the detention center, every detainee surrendered all personal property, which was inventoried and kept in a property container. Evidence was received concerning the detention center's property records and the property container inscribed "Clair Juhl." After Deputy Jensen searched Juhl's jacket at the Wayfarer parking lot and arrested him, an officer brought Juhl directly from the Wayfarer parking lot to the detention center. Consequently, Sutherland's testimony about his daily observations supplied a factual basis for the permissible inference that the jackets, kept at the detention center and produced at trial, were the same jackets worn by Juhl when he was arrested at the Wayfarer parking lot, the scene of the theft. The fact that Sutherland's observations were part of the bases for the inference does not render Sutherland's testimony inadmissible under Rule 602. On the basis of Juhl's objection, the trial court properly overruled Juhl's objection and admitted the jackets as evidence. See Rule 401 (definition of relevance).

Juhl also argues that Sutherland was incompetent to testify about jail records. Juhl contends that he was not given reasonable notice before trial concerning use of a public record and reports, in conformity with Neb. Evid. R. 803(7) (hearsay exceptions) (Neb. Rev. Stat. § 27-803(7) (Reissue 1985)), which provides:

> Upon reasonable notice to the opposing party prior to trial, records, reports, statements or data compilations made by a public official or agency of facts required to be observed and recorded pursuant to a duty imposed by law, unless the sources of information or the method or circumstances of the investigation are shown by the

opposing party to indicate a lack of trustworthiness.

"To preserve a claimed error in admission of evidence, a litigant must make a timely objection, which specifies the ground of the objection to the offered evidence." *State v. Cox*, 231 Neb. 495, 502, 437 N.W.2d 134, 139 (1989). Juhl did not make a hearsay objection to Sutherland's testimony. Rather, Juhl's objection was directed to Sutherland's competency as a witness and, apparently, was based on Rule 602. An objection which is based on a specific ground and properly overruled does not preserve an evidential question for appellate review on any other ground. See, *State v. Cox, supra*; *Havlicek v. State*, 101 Neb. 782, 165 N.W. 251 (1917). There is no error regarding the trial court's admission of Sutherland's testimony over Juhl's objection concerning the records of the detention center.

## ENHANCEMENT HEARING/ HABITUAL CRIMINAL ACT

Juhl contends that the enhanced penalty under the Nebraska habitual criminal act, §§ 29-2221 et seq., is unavailable in view of the discrepancy between the dates alleged in the information and the dates established by the State's proof at the enhancement hearing.

For application of the enhanced penalty under the Nebraska habitual criminal act, the information must contain allegations that the defendant has been (1) twice previously convicted of a crime, (2) sentenced for the previous convictions, and (3) committed to prison for a term of not less than 1 year for each of the previous convictions and sentences. *State v. Luna*, 211 Neb. 630, 319 N.W.2d 737 (1982).

As we have previously noted in this opinion, the date for Juhl's sentencing in the state court was February 5, 1982, not February 8, 1982, as alleged in the information against Juhl. Also, the date for Juhl's conviction in federal court was November 14, 1985, not November 27, 1985, as alleged in the information. The trial court received evidence which established the correct dates for the imposition of sentences in the state court and conviction in federal court.

With the exception of an erroneous admission or exclusion of evidence, a defendant, as the appellant claiming reversible

error in a criminal case, must demonstrate that a trial court's conduct, whether action or inaction during the proceeding against the defendant, prejudiced or otherwise adversely affected a substantial right of the defendant. See, *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989) (rejection of appellant's tendered instruction); *State v. Irish*, 223 Neb. 578, 391 N.W.2d 137 (1986) (jury instruction); *State v. LeBron*, 217 Neb. 452, 349 N.W.2d 918 (1984) (overruling appellant's motion for mistrial). Cf., *Bishop v. Farm Bureau Life Ins. Co.*, 228 Neb. 74, 421 N.W.2d 423 (1988) (rejection of appellant's tendered instruction); *Hyde v. Cleveland*, 203 Neb. 420, 279 N.W.2d 105 (1979) (irregularity in order of proof); *Insurance Co. of North America v. Hawkins*, 197 Neb. 126, 246 N.W.2d 878 (1976) (mischaracterization of procedure). Also, cf., *State v. Cox, supra* at 504, 437 N.W.2d at 140 ("In a jury trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt"); *State v. Lenz*, 227 Neb. 692, 419 N.W.2d 670 (1988).

Juhl has not shown that he was misled or confused regarding the dates in question or that any prejudice resulted from the incorrect dates which initially appeared in the information. Therefore, Juhl has failed to demonstrate reversible error in the enhancement hearing for the habitual criminal penalty under § 29-2221.

## CONCLUSION

All assignments of error asserted by Juhl are without merit. Accordingly, we affirm Juhl's conviction and sentence.

AFFIRMED.