MARK BUHRMANN, APPELLANT, V. JERRY L. SELLENTIN ET AL., MEMBERS OF THE NEBRASKA STATE PERSONNEL BOARD; JAN PIEPER, DIRECTOR, STATE DEPARTMENT OF PERSONNEL, ET AL., APPELLEES.

352 N.W.2d 907

Filed August 10, 1984.    No. 83-526.

Terrance A. Poppe of Hecht, Sweet, Alesio & Morrow, P.C., for appellant.

Paul L. Douglas, Attorney General, and Sharon M. Lindgren, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

The plaintiff, Mark Buhrmann, appeals from the order of the district court which affirmed the action of the Nebraska State Personnel Board terminating Buhrmann's employment with the Nebraska Department of Correctional Services.

Buhrmann was employed as a correctional corporal at the state penitentiary. On May 6, 1982, Buhrmann was arrested and charged with pandering. The reports of the investigating officers state that Buhrmann procured the services of a prostitute for two undercover officers.

On May 7, 1982, Adelbert Knight, the major in charge of security at the penitentiary, telephoned Buhrmann and informed him that he was suspended from his employment. Buhrmann received an "Official Notice of Suspension" dated May 10, 1982, informing him that he was suspended without pay until further notice. In a letter dated May 18, 1982, which included a statement of charges, Major Knight advised Buhrmann that a meeting with Warden Charles Black and Knight had been scheduled for May 25, 1982, and at that time Buhrmann could present any information valuable to his defense. On May 24, 1982, Buhrmann was accepted in the pretrial diversion program and the charge was dismissed. Participation in the program involves an admission of guilt.

Buhrmann attended the May 25 meeting, with counsel.

Following that meeting, Warden Black recommended that Buhrmann's employment be terminated. Termination of his employment was approved by Charles Benson, director of the Department of Correctional Services, on May 26, 1982. After a hearing before the State Personnel Board, the action of the agency was affirmed.

Upon appeal to the district court, that court held the suspension of Buhrmann from May 7 to May 26 was invalid because Knight had failed to follow the procedure outlined in the rules and regulations of the Nebraska State Personnel System manual. The trial court ordered that Buhrmann be paid his salary and benefits for the period of suspension. As to termination, the court held that the proper procedure had been followed and that the evidence supported that action. Buhrmann has now appealed to this court.

An appeal from a decision of the State Personnel Board is governed by the provisions of the State Administrative Procedure Act. Neb. Rev. Stat. § 81-1319 (Reissue 1981). In such an appeal this court determines only whether the findings of the agency are supported by substantial evidence and whether the district court applied the proper statutory criteria. *The 20's, Inc. v. Nebraska Liquor Control Commission*, 190 Neb. 761, 212 N.W.2d 344 (1973); Neb. Rev. Stat. §§ 84-917 and 84-918 (Reissue 1981).

On this appeal Buhrmann contends that since the suspension was improper, it follows that the termination was also improper. This contention is without merit.

The suspension of Buhrmann was improper because he was not given an opportunity to refute the charges against him or to present mitigating evidence before the suspension was imposed as required by rule 13.11.2 of the Nebraska Personnel System Rules and Regulations.

Rule 13.11.2 provides:

13.11.2. The agency head, upon obtaining information which would indicate the possibility of administering corrective or disciplinary action, shall attempt to verify the information and give the employee an opportunity to refute the information or present mitigating evidence. The agency head shall notify the employee prior to any

meeting which occurs pursuant to this section.

However, as to the termination, Buhrmann was given an opportunity to present information vital to his defense at the May 25, 1982, meeting which he attended with his counsel.

In *Glenn v. Newman*, 614 F.2d 467 (5th Cir. 1980), the fifth circuit dealt with a similar situation and concluded that a failure to provide due process at some point in a termination procedure does not invalidate the termination if that defect was later cured. The court stated at 472:

> In seeking to minimize the risk of wrongful termination to an employee without burdening the government with elaborate pretermination proceedings, this Court has outlined a procedure to meet minimum due process requirements. *Thurston v. Dekle,* 531 F.2d at 1273. This includes, prior to termination, written notice of the reasons for termination and an effective opportunity to rebut those reasons. Effective rebuttal means giving the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision. *Id.* We hold that the pretermination procedures afforded Glenn did not conform with *Thurston's* requirements.

> Nevertheless, we find that any error involved was cured in the subsequent public hearing before the Mayor and City Council. See *Blair v. Robstown Independent School District*, 556 F.2d 1331, 1334-35 (5th Cir. 1977); *Thurston v. Dekle*, 531 F.2d at 1269. In the post-termination proceedings, Glenn received written notice of the charges against him and was given sufficient time to prepare for the hearing. At the hearing, he was represented by an attorney who examined and cross-examined witnesses on his behalf, and he was allowed to present his case orally.

See, also, *Wilson v. Taylor*, 658 F.2d 1021 (5th Cir. 1981).

The procedural error was corrected by affording Buhrmann an opportunity to present a defense to charges of which he had been specifically notified before the termination took place. The termination did not violate any rules of the State Personnel System, nor did it otherwise violate the due process rights of

Buhrmann.

Buhrmann next contends that the State Personnel System rules require that he be reinstated because the charges against him were dropped. The section upon which Buhrmann relies does not require automatic reinstatement.

Rule 13.14.5 provides:

> 13.14.5. Suspension for Legal Charges or Investigation. Employees who are under investigation for or charged with criminal activity may, following a meeting as prescribed in paragraph 13.11.2 be indefinitely suspended pending outcome of a trial or investigation. Employees who are found guilty shall not be compensated for the suspension and *may* be dismissed. If they are not found guilty or if no judicial action is taken, they may be restored to their position and granted full pay and service credit for the period of their suspension, if circumstances justify such restoration.

(Emphasis supplied.)

Generally, the word "may" will be given its ordinary, permissive, and discretionary meaning unless it can be shown that the intent of the drafters would be defeated by the application of such a meaning. See, *State ex rel. Hubbard v. Northwall*, 150 Neb. 894, 36 N.W.2d 282 (1949); *Miller v. Schlereth*, 151 Neb. 33, 36 N.W.2d 497 (1949); *County of Keith v. Triska*, 168 Neb. 1, 95 N.W.2d 350 (1959); *State v. Noll*, 171 Neb. 831, 108 N.W.2d 108 (1961). In the present case the word "may" indicates that an employee who has been charged with criminal activity may be reinstated at the discretion of the board if the circumstances warrant. The determination made by the board in this case was that the circumstances warranted termination.

Buhrmann next argues that the pretermination hearing of May 25, 1982, violated his due process rights because Warden Black, the officer before whom the hearing was held, had made a determination of guilt prior to that hearing. A similar argument was advanced in *Nevels v. Hanlon*, 656 F.2d 372 (8th Cir. 1981). The court stated at 376-77:

> In his cross-appeal, Nevels alleges that the district court erred in holding that he was not denied his due process

right to have his case heard by an impartial decisionmaker. The crux of Nevels' claim is that, because the Merit System Rules require the Commissioner to make the initial determination to dismiss an employee and then to make the final decision of any appeal, the Commissioner is predisposed to uphold his original decision and is, therefore, not an impartial decisionmaker. *See In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 625, 99 L. Ed. 2d 942 (1955). In *Withrow v. Larkin*, 421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975), a doctor challenged the impartiality of the state medical examining board, which was to make the final determination of whether to warn and reprimand, to suspend or revoke his license to practice medicine, or to institute criminal action, on the grounds that the board also instituted the action and investigated the charges. The Court held that the due process clause did not prevent the board from deciding the issue of revoking the plaintiff's license. It said: "The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication . . . must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." 421 U.S. at 47, 95 S. Ct. at 1464.

Although the Commissioner is technically the party who initiated Nevels' discharge, in actuality, it was initiated by Nevels' immediate supervisor. Having the Commissioner review the actions of his subordinate runs a far less "risk of actual bias or prejudgment" than the practice in *Withrow* which was held to be valid. We, therefore, agree with the district court's rejection of Nevels' claim that the Commissioner was "constitutionally incapable of rendering an objective

judgment." *See also Hortonville Joint School Dist. No. 1
v. Hortonville Educ. Ass'n*, 426 U.S. 482, 492-94, 96 S.
Ct. 2308, 2314-15, 49 L. Ed. 2d 1 (1976); *Norbeck v.
Davenport Community School Dist.*, 545 F.2d 63, 68-69
(8th Cir. 1976), *cert. denied*, 431 U.S. 917, 97 S. Ct. 2179,
53 L. Ed. 2d 227 (1977); *Klinge v. Lutheran Charities
Ass'n*, 523 F.2d 56, 63 (8th Cir. 1975).

We conclude that Buhrmann was not deprived of his due
process rights. The hearing was held before Warden Black, and
his recommendation to terminate Buhrmann was reviewed and
approved by Director Benson. This is similar to the procedure
found constitutional by the eighth circuit in *Nevels v. Hanlon,
supra.* The record does not show that Benson was otherwise
incapable of rendering an objective judgment in the present
case.

Buhrmann's final contention is that the termination was
arbitrary and capricious and not supported by the evidence. In
particular, Buhrmann makes note of the facts that he had no
prior criminal record, that he had a good employment record at
the penitentiary, and that others with criminal records are
employed at the penitentiary.

Rule 13.12 of the State Personnel System rules provides:

13.12 Reasons for Imposing Corrective or Disciplinary
Action. An agency head may, if an employee commits one
or more of the following offenses, take appropriate
corrective or disciplinary action:

. . . .

13.12.14. Other acts, based on competent evidence, which
bring discredit upon the state, including but not limited to
acts listed above.

The termination was based upon this rule.

The district court found as follows:

11. That the plaintiff admittedly and by the proof
adduced, committed acts constituting a felony which
involved moral turpitude; that because of the potential for
harrassment [sic] by prisoners due to plaintiff's conduct
that plaintiff's continued employment at the institution
would compromise the security of the institution and that
plaintiff's conduct brought discredit upon the state and

the institution by which plaintiff was employed.

12. That there is a substantial difference between the plaintiff's conduct which constitutes a felony and the conduct of some of the other guards who are ex-offenders. That in any event, that each of the ex-felony offenders have paid their debts to society and had demonstrated a useful life prior to being hired by the institution.

Upon a review of the record we conclude that the termination of Buhrmann was for reasonable cause and is supported by substantial evidence. There being evidence to support the termination, the action was not arbitrary or capricious. See, *Lewis v. City of Omaha*, 153 Neb. 11, 43 N.W.2d 419 (1950); *Beasley v. City of Omaha*, 212 Neb. 153, 322 N.W.2d 377 (1982).

The judgment of the district court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I find that I must respectfully dissent from the majority in this case. While I am in accord with all that the majority has said with regard to matters relating to due process and the manner in which various hearings were conducted, I cannot agree with the majority that the evidence establishes a violation of rule 13.12.14 of the Nebraska State Personnel System rules, which specifically provides that one of the grounds for discharge is "other acts, based on competent evidence, which bring discredit upon the state, including but not limited to acts listed above." While I am in complete accord with the majority that the actions of the appellant in this case were reprehensible and indeed brought discredit upon the appellant, I do not find any evidence to indicate that the state was somehow discredited. That is where I think the difficulty occurs. As noted by the majority, the termination in this case was based solely upon rule 13.12.14 of the State Personnel System rules, and was not based upon the finding made by the district court to the effect that the acts of the appellant constituted a felony which involved moral turpitude and which therefore would compromise the security of the institution. The pandering was conducted outside of the institution and while the appellant was off duty. I think it would be a relatively easy matter for the personnel code to succinctly

provide that one of the grounds for discharge is the commission of an act by a state employee which constitutes a felony, whether prosecuted or not. By making such provision employees would be adequately forewarned that their actions outside of their employment may nevertheless result in their being discharged. In this case I do not believe the evidence was sufficient to establish any discredit on the state that may result by permitting Buhrmann to remain employed, but that is a matter which should be resolved by amending the personnel rules and not by a leap of faith.