STATE OF NEBRASKA, APPELLEE, V. KENNETH W. BOYSAW, APPELLANT.

422 N.W.2d 346

Filed April 21, 1988.   No. 87-464.

Dennis R. Keefe, Lancaster County Public Defender, and Sean J. Brennan, for appellant.

Robert M. Spire, Attorney General, and Janie C. Castaneda, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

Following a bench trial, the adult defendant-appellant, Kenneth W. Boysaw, was convicted of having sexually assaulted a 9-year-old girl in violation of Neb. Rev. Stat. § 28-320.01 (Reissue 1985). Boysaw's five assignments of error combine to raise two issues: whether the district court erred in (1) failing to suppress his statements to the police and (2) finding the evidence sufficient to support his conviction. We affirm.

The evidence adduced at Boysaw's suppression hearing reveals that in the course of investigating the matter, Lincoln Police Officer Bruce M. Bell interviewed the child victim, her mother, and Boysaw's wife, and as a result concluded that Boysaw had sexually assaulted the child. Although no warrant

was ever obtained for Boysaw's arrest, Bell went searching for Boysaw. Not finding Boysaw at his own residence, Bell asked for the help of another officer, and the two, Bell and Lincoln Police Officer Richard Hubka, then went to the residence of one known to be Boysaw's friend. As Boysaw was not at his friend's residence, the two officers, who were in uniform and armed, parked their respective marked police cruisers near the defendant's residence and waited for Boysaw, checking the residence every 15 minutes or so.

Later in the evening, Boysaw's stepson informed the officers that Boysaw had returned to his own residence. The officers then drove to Boysaw's residence and parked in an alley at a distance of approximately 25 feet from the entrance to Boysaw's residence. According to Bell, Boysaw was walking out of his residence as the two officers approached the porch. After Boysaw walked onto the porch, he was escorted to one of the cruisers where he was handcuffed and given the *Miranda* warnings. While seated in the back seat of the cruiser, Boysaw admitted that he took the victim to the basement laundry room of his residence, where he unzipped his pants, exposed his penis, lay on top of the child, removed her underpants, and fondled her vaginal area. While he was so engaged, his wife happened upon the scene, whereupon he left the child to go to the home of a friend. Before leaving, he saw his wife take the victim from the laundry room.

Bell further testified that while Boysaw was being transported to the police station, he told the officers where he had hidden the child's underpants, which the police later found at the described location. Boysaw also gave the police a written statement in which he essentially repeated the sordid details of the event, stressing, however, that he at no time penetrated the child.

Boysaw's version of the events leading to his seizure or arrest differs from those described by Bell. According to his account, he, through his living room window, saw the cruisers arrive. He thereupon went to the doorway as the officers came onto the porch, opened the door, and, while still in his residence, asked if he could help them. Bell then said, "Would you please step out?" or "Would you step out?" It was after that exchange that

Boysaw stepped onto the porch. On cross-examination, Bell admitted that in a report he prepared shortly after the arrest, he wrote that he had asked Boysaw to step outside and that Boysaw had willingly done so. Nonetheless, Bell insisted that Boysaw was in fact walking out of his residence as Bell and Hubka approached.

According to Hubka's testimony, Boysaw was already outside his residence when the two officers approached and was never asked to step outside.

Boysaw does not contend that the officers lacked probable cause to arrest him, but grounds the first issue on the fact that the police did not bother to obtain a warrant prior to arresting him. He claims that as a result his arrest was unlawful, and, therefore, the statements he made to the police must, under *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), and its progeny, be suppressed as products of that illegal seizure.

Both the Constitution of this nation and that of this state guarantee the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Neb. Const. art. I, § 7. In *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), the U.S. Supreme Court held that absent exigent circumstances, the fourth amendment prohibits a warrantless entry into a home to make a felony arrest. However, the U.S. Supreme Court had noted in an earlier opinion that a woman standing in the doorway of her house had no expectation of privacy. Thus, it held her warrantless arrest valid, even though it was made after she retreated into her home, since the arrest had been set in motion while she was exposed to public view, and since probable cause existed and there was a need to act quickly. *United States v. Santana*, 427 U.S. 38, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976). Accordingly, the court in *United States v. Botero*, 589 F.2d 430 (9th Cir. 1978), found that, where there had been no subterfuge in getting the defendant to open the door to his residence in response to a federal agent's knock, the defendant's warrantless arrest at the doorway to his residence was valid. By way of contrast, however, the court in *United States v. Johnson*, 626 F.2d 753 (9th Cir. 1980), *aff'd* 457 U.S. 537, 102 S. Ct. 2579, 73 L. Ed. 2d 202 (1982), held that the

warrantless arrest of the defendant while standing in the doorway of his home, the door of which he had opened in response to the false identification given by government agents, violated the fourth amendment. In *State v. Horn*, 218 Neb. 524, 357 N.W.2d 437 (1984), we held valid the defendant's warrantless arrest, which took place outside his trailer home, after a consensual search of the trailer revealed the presence of contraband. The *Horn* court also quoted from the explanation given in *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980), that a person is seized or arrested only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that his or her freedom of movement had been restrained, either by means of physical force or by a show of authority. Accord *State v. LaChappell*, 222 Neb. 112, 382 N.W.2d 343 (1986).

The trial judge appears to have found that Bell had in fact asked Boysaw to step out, as Boysaw claims, but found that Boysaw had not been "intimidated" into leaving his residence; that Boysaw could not reasonably have considered his freedom of movement to have been restrained when he stepped onto the porch; and that Boysaw was not seized or arrested until he left the protection of his residence, at which time he no longer had a reasonable expectation of privacy. The trial judge thus concluded that the arrest was valid.

A trial judge's findings of fact in ruling on a motion to suppress will be upheld on appeal to this court unless clearly wrong; moreover, the trial judge as the trier of fact is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony; thus, in reviewing such a ruling this court will neither reweigh the evidence nor resolve conflicts therein, as we take into account the fact that the trial judge observed the witnesses. *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988); *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987).

There is nothing in the record which enables us to say the findings of the trial judge are clearly wrong; thus, we are bound by them. Accordingly, we must conclude Boysaw's arrest did not violate U.S. Const. amend. IV or Neb. Const. art. I, § 7. There is therefore no basis upon which to suppress the

statements Boysaw made to the police.

We must observe, however, that why officers with a duty to uphold the rights of the citizens they police would fail to obtain a warrant under the circumstances of this case, and thereby risk a finding that they had trampled upon the federal or state Constitution, escapes us. Such an attitude will eventually lead to an illegal arrest, thereby destroying what might otherwise have been estimable police work, and to a wail by those very same officers that an offender was "let off on a technicality."

Under the circumstances in this case, however, we are free to move on to a consideration of the second issue, whether the evidence supports the conviction.

Section 28-320.01 characterizes "sexual contact" between an actor who is "at least nineteen years of age" and one "fourteen years of age or younger" as a "sexual assault of a child." Neb. Rev. Stat. § 28-318(5) (Reissue 1985) defines "sexual contact" as including "the intentional touching of the victim's sexual or intimate parts."

At trial, there were not only Boysaw's admissions to the police, as detailed earlier in this opinion, but the child's testimony by deposition that Boysaw "took off my underwear and laid me down and then he unsnapped his pants and unzipped them and pulled his pants half down and touched his private with mine." Moreover, the child's mother testified by stipulation that her daughter reported that Boysaw "had rubbed his hand on her [the child's] vagina." The event is further corroborated by the fact that the child's underpants were found where Boysaw said they would be found. No one could reasonably suggest that the child's "sexual parts" were not touched or that the touching was other than intentional. Thus, the evidence is not only sufficient to support the conviction, it does so overwhelmingly.

Since the record sustains neither of Boysaw's assignments of error, the judgment of the district court is affirmed.

AFFIRMED.