STATE OF NEBRASKA, APPELLEE, V. TIMOTHY MCCURRY, APPELLANT.

424 N.W.2d 364

Filed June 17, 1988.   No. 87-563.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Timothy McCurry appeals from his conviction by a jury in the district court for Douglas County on the charge of first degree sexual assault in violation of Neb. Rev. Stat. § 28-319 (Reissue 1985). McCurry contends that the district court erred in not suppressing his statements to police officers, which statements, over McCurry's renewed objections at trial, were received into evidence through the officers' testimony. The background for the statements in question was supplied at the hearing on McCurry's suppression motion.

The victim was sexually assaulted in her apartment bedroom on the evening of November 16, 1986. As the result of their investigation, police arrested McCurry for that assault and brought him to police headquarters for questioning. At the outset of their conversation with McCurry, the officers did not know the particular color of the victim's residence. However, the officers had other information concerning the sexual

assault under investigation, such as the victim's description of her assailant and identification of the assailant from a number of police photographs, data from police records concerning McCurry's prior arrest for rape, a disinterested witness' tentative identification of McCurry based on a publicized description of the victim's assailant, and footprints at the scene of the sexual assault. Sgt. Kenneth Bavasso asked to see the bottoms of McCurry's tennis shoes and took McCurry's shoes after noticing that the pattern on the bottoms of those shoes fit the pattern of footprints found outside the victim's residence. Bavasso then joined Officer Michael Hoch and McCurry in an interview room, where Hoch told McCurry that the officers wanted to talk to him about the sexual assault which had occurred in McCurry's neighborhood. Hoch then read McCurry his "rights" pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). When asked whether he understood each of the rights in the *Miranda* warning, McCurry answered "yes." The officers never physically abused McCurry or threatened any form of physical abuse of McCurry, who, throughout the ensuing interview, talked coherently with the officers.

In the course of conversation, Hoch stated that McCurry had been identified as the sexual assailant and that the officers wanted to inform McCurry about their evidence against him. Hoch explained that the officers wanted McCurry to voluntarily submit samples of his blood, saliva, and hair. Hoch then told McCurry that, if he would not voluntarily furnish the samples, the police would obtain a court order requiring McCurry to supply the bodily samples requested. See Neb. Rev. Stat. §§ 29-3301 et seq. (Reissue 1985) ("Identifying Physical Characteristics Act," which prescribes a procedure for obtaining data from an individual for identification). At that point in the conversation, which had dealt only with the matter of obtaining samples of McCurry's "blood, saliva and two hair samples," McCurry stated: " 'Well, I have to talk to my attorney about that.' " Hoch responded: " 'That's fine. . . . But if it's necessary, we'll get a Court order,' " and continued to describe the evidence linking McCurry with the sexual assault. As Hoch recounted the episode:

> I went on to advise him [McCurry] about the footprints found at the scene, around the scene and on the door of the scene, at which time he made a statement concerning his footprints being at the scene, and also the color of a house which the sexual assault occurred at which neither Sgt. Bavasso or myself had indicated to him.

Sergeant Bavasso related the conversation during Hoch's description of the footprints found by police at the scene of the assault:

> Officer Hoch was saying that we found footprints in and around and inside the house where the assault occurred, and Timothy McCurry responded, "Well, that's not unusual. I'm always in that area. I cut through that area and I know that house" and I [Bavasso] said, "What house?" And he described this gray house which at the time I [Bavasso] did not even know it was a gray house . . . .

When asked how he knew the victim's house was gray, McCurry "mumbled something . . . . It wasn't very clear what he said." Otherwise, McCurry spoke freely with the officers and at no time refused to talk with them.

Pursuant to Neb. Rev. Stat. § 29-115 (Reissue 1985) (suppression of a defendant's statement), McCurry moved for suppression of his oral statements to police, claiming that his statements were the product of custodial interrogation without the prerequisite *Miranda* warning and that his statements were not freely and voluntarily made to the police. The district court overruled McCurry's suppression motion.

At trial, when the State offered testimony concerning McCurry's statements about his footprints and his knowledge that the victim's residence was gray, McCurry's lawyer "renewed" his "previous objection," apparently a somewhat inarticulate reference to the objections to admissibility assigned in McCurry's suppression motion. The court overruled that objection and allowed Officers Hoch and Bavasso to testify concerning McCurry's statements regarding his footprints found at the victim's gray house. The officers' additional testimony regarding their interrogation of McCurry was substantially the same as that given at the suppression hearing.

Other testimony and physical evidence at trial established that a sexual assault had occurred and linked McCurry with that crime. Although McCurry denied that he had sexually assaulted the victim, the jury found McCurry guilty as charged.

In his appeal, McCurry acknowledges that his statement, "Well, I have to talk to my attorney about that," related specifically and only to Officer Hoch's indication that a court order would be obtained for samples of McCurry's blood, saliva, and hair, if McCurry refused to furnish such samples voluntarily. Therefore, in his appeal McCurry does not contend that his oral statements about his footprints at the victim's residence, which he described as a gray house, were the product of custodial interrogation without the prerequisite *Miranda* warning, although the question about compliance with *Miranda* was raised in McCurry's suppression motion. As we have noted above, McCurry does not contend that his reference to consultation with a lawyer was tantamount to a request for a lawyer which must be "scrupulously honored" in conjunction with custodial interrogation by police. See *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Therefore, McCurry concedes that there is no *Miranda* problem or issue in his case. Rather, as his solitary assignment of error, McCurry claims that evidential use of his coerced statements was a denial of due process guaranteed by Neb. Const. art. I, § 3, and U.S. Const. amends. V and XIV. In his brief, McCurry argues:

> Although it is clear that Hoch's reference is only to the blood, hair, and saliva samples, Defendant's argument turns syllogistic at this point. . . . Certainly, it would not be hard to understand how the Defendant would be led to believe that a COURT ORDER COULD BE OBTAINED TO FORCE HIM TO DO ANYTHING, INCLUDING ANSWER FURTHER QUESTIONS.

Brief for Appellant at 6.

> " ' "In determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court recognizes the trial court as the 'trier of fact' and takes into consideration that the trial court has observed witnesses testifying regarding such motion to

suppress." ' " *State v. Vrtiska,* 225 Neb. 454, 459, 406 N.W.2d 114, 119 (1987). See, also, *State v. Copple,* 224 Neb. 672, 401 N.W.2d 141 (1987).

At a hearing to suppress evidence, the court, as the "trier of fact," is the sole judge of the credibility of witnesses and the weight to be given to their testimony and other evidence. See *State v. Dixon,* 222 Neb. 787, 387 N.W.2d 682 (1986). In reviewing a court's ruling as the result of a suppression hearing, the Supreme Court does not reweigh the evidence or resolve conflicts in the evidence. Cf. *State v. Wood,* 220 Neb. 388, 370 N.W.2d 133 (1985).

" 'In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. . . .' " *State v. Vrtiska,* [225 Neb.] at 459, 406 N.W.2d at 119.

*State v. Blakely,* 227 Neb. 816, 820, 420 N.W.2d 300, 303 (1988). See, also, *State v. Gibson, ante* p. 455, 422 N.W.2d 570 (1988).

The gist of McCurry's argument is that police indication that a court order would be obtained for samples of McCurry's blood, saliva, and hair was coercion preventing voluntariness in McCurry's statements, preventing constitutional admissibility of a defendant's statement.

As we observed in *State v. Bodtke,* 219 Neb. 504, 510, 513, 363 N.W.2d 917, 922-23 (1985):

As expressed by Justice Frankfurter in *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961): "The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." . . .

. . . Use of an accused's involuntary statement . . .

offends due process and fundamental fairness in a criminal prosecution, because one acting with coercion, duress, or improper inducement transports his volition to another who acts in response to external compulsion, not internal choice. With voluntariness as the ultimate test regarding an accused's statement, the focal point of inquiry into voluntariness is whether the statement is "the product of a rational intellect and a free will." [Citations omitted.]

. . . .

. . . To be admissible, a statement or confession must have been freely and voluntarily made. [Citations omitted.]

In *State v. Norfolk*, 221 Neb. 810, 819, 381 N.W.2d 120, 127 (1986), we stated:

The State bears the burden of proving that a defendant's statement was voluntarily made, before that statement is admissible as evidence against the defendant. See *State v. Joy*, 218 Neb. 310, 353 N.W.2d 23 (1984). In determining whether the State has satisfied its burden, a court examines the totality of the circumstances to ascertain whether the defendant's statement "is 'the product of a rational intellect and a free will.' " [Citation omitted.]

See, also, *State v. Dixon*, 222 Neb. 787, 387 N.W.2d 682 (1986).

Officer Hoch told McCurry that, in the absence of McCurry's voluntarily furnishing the samples of blood, saliva, and hair, the officers would "get a court order" requiring that McCurry supply the bodily samples relative to identifying the assailant in the sexual assault case being investigated. Sections 29-3301 to 29-3307, as the Identifying Physical Characteristics Act, contain a definite procedure for law enforcement officers to obtain a court order authorizing acquisition of an individual's bodily or physical evidence in efforts to identify a perpetrator of a crime. In particular, § 29-3303 prescribes the contents of a peace officer's affidavit necessary for issuance of the court order under the Identifying Physical Characteristics Act, including a required showing of probable cause. Officer Hoch did not represent that police had already obtained a court order for the samples from McCurry, but simply stated what the

law entitled the officers to do—request a court order for bodily samples from McCurry.

In reference to the Identifying Physical Characteristics Act, this court stated in *State v. Swayze*, 197 Neb. 149, 153, 247 N.W.2d 440, 443 (1976):

> The procedure followed in obtaining a sample of the defendant's blood for testing was analogous to obtaining a search warrant. The peace officer must file an affidavit with a judge or magistrate. Upon a showing of probable cause, the judge or magistrate has the power to issue the order. . . . The entire Identifying Physical Characteristics Act is rife with safeguards designed to protect the individual from whom physical evidence is sought.

In *State v. Rathburn*, 195 Neb. 485, 239 N.W.2d 253 (1976), Rathburn contended that he did not consent to a search of his automobile's trunk, because he had originally refused to open the trunk but later opened the trunk only after a police officer stated: " 'Okay, I'll get a warrant.' " 195 Neb. at 489-90, 239 N.W.2d at 256. This court rejected Rathburn's claim that the officer's statement about obtaining a search warrant constituted coercion, which vitiated Rathburn's consent to search of his automobile, and stated:

> There is no doubt that false assertions that one already *has* a warrant will vitiate a consent to search. Bumper v. North Carolina, [391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968)]. However under the facts of the instant case, all the officer said was that he would *get* a warrant. In situations where the searching officer has stated that he could obtain or was in the process of getting a warrant, the courts have never found such a statement coercive per se. Rather, the courts have generally looked at the statement made by the officer to determine if it was coercive in the particular factual situation.

(Emphasis in original.) 195 Neb. at 490, 239 N.W.2d at 256. See, also, *People v. Gurtenstein*, 69 Cal. App. 3d 441, 138 Cal. Rptr. 161 (1977): An officer's statement that he could either apply for a search warrant or the defendant could consent to a search of the defendant's house was not coercive, since the statement merely informed the defendant what the officer had a legal

right to do; *State v. Lange*, 255 N.W.2d 59 (N.D. 1977): officer's statement that, without defendant's consent, the officer would " 'get a warrant and search [defendant's car] anyway' " was not inherently coercive, 255 N.W.2d at 64 (citing *State v. Rathburn, supra*); *People v. Hancock*, 186 Colo. 30, 525 P.2d 435 (1974): where police officers informed defendant's wife that they had reason to believe that her husband was involved in a crime and that she possessed the right to refuse their entrance into the home, and where wife signed consent waiver form that was read to her, the consent to the search was intelligently and freely given, even though she had been told that a warrant would be sought if consent was not obtained.

Thus, as we have already pointed out, Officer Hoch informed McCurry about what course of action, authorized by the Identifying Physical Characteristics Act, could and would be taken in response to McCurry's refusal to furnish the samples of blood, saliva, and hair. Analogizing McCurry's case with the above-mentioned decisions dealing with consent to a search after an officer has indicated he would obtain a search warrant in the absence of consent to the search, we hold that a law enforcement officer's communication to a defendant which expresses the officer's intention to take a course of conduct permissible under the law is not, by itself, coercion preventing voluntariness of the defendant's statement in response to the officer's communicated intention. Under the circumstances, Officer Hoch's statement, indicating a prospective course of action permissible under the law, did not, by itself, constitute coercion which prevented voluntariness of McCurry's statements. In view of all the circumstances surrounding McCurry's statements in question, we cannot reach a conclusion other than the statements were " ' "the product of a rational intellect and a free will." ' " *State v. Norfolk*, 221 Neb. 810, 819, 381 N.W.2d 120, 127 (1986); *State v. Bodtke*, 219 Neb. 504, 363 N.W.2d 917 (1985).

We note that the court instructed the jury concerning McCurry's custodial statements to law enforcement officers and gave NJI 14.52A, which, in substance, directs the jury to disregard a defendant's custodial statement to law enforcement officers unless the jury finds, beyond a reasonable doubt, that

the *Miranda* warning was administered to the defendant before the custodial statement and that the defendant waived each of the rights specified in the *Miranda* warning. In *State v. Rife*, 215 Neb. 132, 337 N.W.2d 724 (1983), this court stated that admissibility of a defendant's custodial statement in relation to the *Miranda* warning was a question of law. Courts in other jurisdictions have reached the same conclusion. See, *State v. Hampton*, 61 N.J. 250, 294 A.2d 23 (1972); *State v. Perry*, 14 Ohio St. 2d 256, 237 N.E.2d 891 (1968); *People v. Sanchez*, 65 Cal. 2d 814, 423 P.2d 800, 56 Cal. Rptr. 648 (1967). Whether the *Miranda* warning has been properly administered and whether the defendant has waived those rights specified in the *Miranda* warning are questions of law affecting the admissibility of evidence and, as such, are matters for judicial determination, not questions of fact for the jury. See Neb. Evid. R. 104 (Neb. Rev. Stat. § 27-104(1) (Reissue 1985)). Cf., *State v. Bodtke, supra* (voluntary character of a statement is a question of fact for the jury, notwithstanding a court's determination, as a matter of law, that the statement is voluntary and, therefore, admissible); *State v. Longmore*, 178 Neb. 509, 134 N.W.2d 66 (1965).

As a final note, we hasten to add that we realize, in the sequence of events which involved McCurry at police headquarters, the officers administered the *Miranda* warning before there was any reference to samples of blood, saliva, and hair from McCurry. One should not read into our opinion more than the opinion itself states. We do not tacitly require or otherwise imply that the *Miranda* warning is an indispensable prerequisite to acquisition of data pursuant to the Identifying Physical Characteristics Act to identify the perpetrator of a crime, such as the blood, saliva, and hair requested in McCurry's situation. Most will readily recognize that the requirement of the *Miranda* warning pertains to an individual's right to remain silent and the admissibility of a defendant's statement which is the product of custodial interrogation by law enforcement officers, see *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), whereas the identificatory data, such as that within the purview of the Identifying Physical Characteristics Act, does not involve a defendant's statement.

See *State v. Swayze*, 197 Neb. 149, 247 N.W.2d 440 (1976).

The district court properly overruled McCurry's suppression motion and correctly admitted the statements as evidence against McCurry.

AFFIRMED.

HASTINGS, C.J., participating on briefs.