STATE OF NEBRASKA, APPELLEE, V. KENNETH V. BEERBOHM,
APPELLANT.
427 N.W.2d 75

Filed August 5, 1988.    No. 87-961.

Frank J. Skorupa for appellant.

Robert M. Spire, Attorney General, and Yvonne E. Gates for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Defendant-appellant, Kenneth V. Beerbohm, was charged in the county court with driving while under the influence of alcohol in violation of Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1986), and with refusing to submit to chemical testing in violation of Neb. Rev. Stat. § 39-669.08(4) (Cum. Supp. 1986). The jury found him not guilty of the first charge, but guilty of refusing to submit to testing. The county court adjudged and sentenced him accordingly, whereupon Beerbohm appealed to the district court, which affirmed the conviction but modified the sentence imposed by the county court. In his appeal to this court Beerbohm asserts the district court erred in failing to find error appearing on the record, in that the county court erred in (1) finding probable cause to arrest him and (2) finding Beerbohm refused to submit to chemical testing. The State has not cross-appealed; thus, we do not concern ourselves with the propriety of the district court's modification of the sentence imposed by the county court, and affirm the judgment of the district court.

Beerbohm moved the county court to suppress all evidence obtained after his arrest, claiming that there was no probable cause to arrest him. At the suppression hearing, Columbus Police Officer James Lippstreu testified that while on duty at approximately 1 o'clock on the morning of October 9, 1986, he was informed by radio that a blue pickup truck bearing license number 10-194 had "scraped the railing on the viaduct" and then headed north. Lippstreu subsequently observed a blue pickup bearing license number 10-Dealer-194 at the intersection of 19th Street and 33d Avenue, heading north on 33d Avenue. Lippstreu followed and observed the pickup, in the course of its travels north on 33d Avenue, weave three or four times from the centerline of the extra-wide northbound lane into those areas which were free of parked cars along the curb.

Lippstreu also testified that as he followed the pickup, he observed it properly negotiate stoplights at the intersections of 33d Avenue and 23d Street and 33d Avenue and 27th Street, properly make a left turn and a right turn, and make what Lippstreu considered an improper left turn at 33d Avenue and 23d Street.

After observing the weaving progress of the pickup, Lippstreu activated his emergency lights, and the pickup pulled into a driveway. Lippstreu found Beerbohm to be the driver.

On the basis of this evidence the county court denied Beerbohm's motion.

At trial, Lippstreu, over Beerbohm's objections, testified as he had at the suppression hearing in all material respects, adding that as he followed the pickup, Lippstreu himself had not found it necessary to weave across the northbound lane of 33d Avenue as he passed the parked cars.

Lippstreu further testified that as he approached the pickup after it had stopped, the driver emerged, his breath smelled strongly of alcohol, and he "had to support himself with his hands against the door and the bed of the pickup at that time." Upon inquiry, Beerbohm told Lippstreu that he had had two beers. Lippstreu then asked Beerbohm to perform two field sobriety tests: to walk heel-to-toe and to touch his nose starting with head back and arms outstretched. Beerbohm was unable to perform either test, nearly falling each time. Lippstreu then placed Beerbohm under arrest. Upon subsequent examination at the scene, Lippstreu discovered that the pickup had "a slight scratch on the right front fender . . . the molding part."

Lippstreu transported Beerbohm to the police station, where Lippstreu read Beerbohm an "Implied Consent Form," which advises the suspect that he is under arrest for driving "while under the influence of alcoholic liquor," informs the suspect that he is required to submit to a chemical test of blood, breath, or urine, warns the suspect that refusal to submit to such a test constitutes a crime, and outlines the penalties involved. The form, which is apparently designed to be read to suspects by a police officer, also states, "If I direct that the test shall be of your breath, the test shall be of your breath. If I direct that the test shall be of your blood or urine, you may choose whether the test shall be of your blood or urine." Lippstreu testified, "We do not have a breath machine, so the defendant had an option whether to take [a] blood or urine [test]." The form in evidence carries a notation that "I hereby direct that the test shall be of your blood-urine."

Although Lippstreu did not recall ever warning Beerbohm

that a refusal to choose between a blood or urine test would be considered a refusal to submit to any test, Lippstreu testified that after he read the foregoing consent form to Beerbohm, he

> asked Mr. Beerbohm which test he would like, and he said, I'll leave that up to you. Whichever's best.
>
> . . . .
>
> . . . Then he was asked a second time which test he would prefer, blood or urine? He said, you choose for me. I said, I will not choose for you. I'm not going to choose which test you will take. That's your choice. And I asked him a third time and he said he wanted to talk to his attorney. . . .
>
> . . . .
>
> . . . I told Mr. Beerbohm that he did not have the right for an attorney at this point.
>
> . . . .
>
> . . . Then I asked Mr. Beerbohm again which test he preferred and he said he would not take either test.

In considering Beerbohm's first assignment of error, that the county and district courts erred in finding probable cause to arrest him, we remind ourselves that this court will uphold a trial court's findings of fact on a motion to suppress unless those findings are clearly wrong. *State v. Price, post* p. 448, 427 N.W.2d 81 (1988); *State v. McCurry*, 228 Neb. 841, 424 N.W.2d 364 (1988); *State v. Rowe*, 228 Neb. 663, 423 N.W.2d 782 (1988); *State v. Dail*, 228 Neb. 653, 424 N.W.2d 99 (1988); *State v. Gibson*, 228 Neb. 455, 422 N.W.2d 570 (1988). Moreover, in determining whether a trial court's findings on a motion to suppress are clearly erroneous, this court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed witnesses testifying regarding such motion. *State v. McCurry, supra*; *State v. Boysaw*, 228 Neb. 316, 422 N.W.2d 346 (1988).

In several recent cases this court has set out clear guidelines for investigatory stops by police officers in this state. We have observed that an investigatory stop must be justified by an objective manifestation that the person stopped has been, is, or is about to be engaged in criminal activity. *State v. Dail, supra*; *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987). A police

officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. *State v. Dail, supra*; *State v. Thomte, supra*. A vehicle weaving in its own lane of traffic provides an articulable basis or reasonable suspicion for stopping a vehicle for investigation regarding the driver's condition in operating the weaving vehicle. Such a circumstance supports an officer's justifiable belief that the weaving vehicle is being driven by a person who is under the influence of alcohol, in violation of the drunk driving statute, § 39-669.07. *State v. Thomte, supra*.

*Fulmer v. Jensen*, 221 Neb. 582, 379 N.W.2d 736 (1986), recently presented a factual situation remarkably similar to that of the present case. In *Fulmer*, the arresting officer was informed by radio that a "white El Camino-type vehicle" bearing a certain license number had been involved in a theft and was last seen traveling north on Central Avenue. *Id*. at 583, 379 N.W.2d at 738. Shortly thereafter, the officer observed a vehicle matching that description some 50 feet from the highway on private property. On this basis alone, the officer approached the vehicle, contacted the driver, Fulmer, and asked him to accompany her to the scene of the theft. Following Fulmer in her patrol car as he drove to the indicated location, the officer noted that the driver operated the car "very slowly and appeared not to know where he was going." *Id*. at 584, 379 N.W.2d at 738. At this point the officer stopped the vehicle, and subsequent investigation indicated that Fulmer appeared to be intoxicated. This court, quoting *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981), noted that

> "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Acknowledging the elusive nature of the concept of cause sufficient to justify a stop, the Court outlined certain guidelines: "But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal

activity." [Citations omitted.] In this case, it is clear that Officer Martin, acting on the facts learned through the radio dispatch, together with her own observations that Fulmer's vehicle was parked with its lights on near the road it was last seen traveling on after the theft, had a particularized and objective basis for suspecting that Fulmer was involved in the theft.

*Fulmer, supra* at 588, 379 N.W.2d at 740-41. See, also, *Wietjes v. Jensen*, 221 Neb. 579, 379 N.W.2d 734 (1986).

It is noteworthy that Lippstreu did not stop Beerbohm's automobile as soon as he located it, based solely upon the information relayed to him by radio. Compare *Brewer v. Wolff*, 529 F.2d 787 (8th Cir. 1976), and *State v. Benson*, 198 Neb. 14, 251 N.W.2d 659 (1977), *cert. denied* 434 U.S. 833, 98 S. Ct. 117, 54 L. Ed. 2d 93. Instead, Lippstreu followed the suspect vehicle and observed evidence of improper and possibly intoxicated operation with his own eyes. See, e.g., *Fulmer v. Jensen, supra*. The evidence is such that the trial court could properly find, as is implicit in its rulings, that Lippstreu had the requisite "articulable basis or reasonable suspicion," "justified by an objective manifestation," *State v. Thomte, supra* at 662-63, 413 N.W.2d at 919, and that his stop of Beerbohm was appropriate in the circumstances. Beerbohm's first assignment of error is therefore without merit.

Beerbohm next asserts that the county and district courts erred in finding that he refused to submit to a chemical test to determine the alcohol content of his blood.

Section 39-669.08(4) provides:

Any person arrested as provided in this section may, upon the direction of a law enforcement officer, be required to submit to a chemical test of his or her blood, breath, or urine for a determination of the alcohol content. Any person who refuses to submit to a chemical blood, breath, or urine test required pursuant to this section shall be . . . guilty of a crime . . . .

Neb. Rev. Stat. § 39-669.09 (Reissue 1984) provides in relevant part:

The law enforcement officer who requires a chemical blood, breath, or urine test pursuant to section 39-669.08

may direct whether the test shall be of blood, breath, or urine; *Provided*, that when the officer directs that the test shall be of a person's blood or urine, such person may choose whether the test shall be of his blood or urine.

In essence, Beerbohm's argument is that the language of § 39-669.09 requires that if the officer determines the test is to be of anything other than of the breath, he or she must offer the licensee the choice of submitting a sample of either blood or urine. At that point the licensee may elect to take one test or the other or say that either test is acceptable. In the latter event the officer is to make the selection. Thus, Beerbohm presents a question of statutory interpretation, a matter of law in connection with which this court has an obligation to reach an independent conclusion irrespective of the determinations made by the courts below. *Monahan v. School Dist. No. 1, ante* p. 139, 425 N.W.2d 624 (1988); *McKinstry v. County of Cass*, 228 Neb. 733, 424 N.W.2d 322 (1988).

It is a well-established rule that in construing a statute, this court will, if possible, try to avoid a construction which leads to absurd, unjust, or unconscionable results. *Sorensen v. Meyer*, 220 Neb. 457, 370 N.W.2d 173 (1985); *Worley v. City of Omaha*, 217 Neb. 77, 348 N.W.2d 123 (1984). The obvious import of the statute is to leave the ultimate choice of whether it is the blood or urine which is going to be tested to the suspect. It would be absurd indeed to read § 39-669.09 so as to require that an officer must first make a choice, which the suspect then has a right to overrule, but not permit the suspect to make the choice in the first instance. We decline to do so.

A refusal to submit to a chemical test occurs within the meaning of the implied consent law when the licensee, after being asked to submit to a test, so conducts himself as to justify a reasonable person in the requesting officer's position in believing that the licensee understood that he was being asked to submit to a test and manifested an unwillingness to take it. *State v. Clark, ante* p. 103, 425 N.W.2d 347 (1988); *State v. Richter*, 225 Neb. 871, 408 N.W.2d 324 (1987); *Pollard v. Jensen*, 222 Neb. 521, 384 N.W.2d 640 (1986). The result of Beerbohm's refusal to make the choice which is his alone to make, to specify whether he preferred to produce a blood or

urine sample, amounted, as a matter of law, to a refusal to submit to the testing required by § 39-669.08(4). Thus, there is no merit to the second assignment of error.

Accordingly, the judgment of the district court is correct and is therefore affirmed.

AFFIRMED.

CAPORALE, J., dissenting in part.

I certainly agree that there was ample probable cause to arrest defendant, Kenneth V. Beerbohm, and that his first assignment of error is therefore without merit. However, while the majority correctly cites the rules of statutory construction, it, in my judgment at least, misapplies them and therefore comes to the mistaken conclusion that Beerbohm refused to submit to chemical testing in violation of Neb. Rev. Stat. § 39-669.08(4) (Cum. Supp. 1986), and thus erroneously rejects Beerbohm's second assignment of error.

The precise statement of the question presented by Beerbohm's second assignment of error is: What is the meaning of the word "may," as used in the phrase "such person may choose whether the test shall be of his blood or urine," in Neb. Rev. Stat. § 39-669.09 (Reissue 1984)? In this instance, as Beerbohm correctly points out, the Legislature has provided clear guidance in Neb. Rev. Stat. § 49-802 (Reissue 1984), which reads in relevant part:

Unless such construction would be inconsistent with the manifest intent of the Legislature, rules for construction of the statutes of Nebraska hereafter shall be as follows:

(1) When the word may appears, permissive or discretionary action is presumed. When the word shall appears, mandatory or ministerial action is presumed.

The word "may" in a statute will generally be given its ordinary, permissive, and discretionary meaning unless it can be shown that the intent of the drafters would be defeated by application of that meaning. *In re Application A-15738*, 226 Neb. 146, 410 N.W.2d 101 (1987); *State ex rel. Douglas v. Schroeder*, 222 Neb. 473, 384 N.W.2d 626 (1986); *Buhrmann v. Sellentin*, 218 Neb. 288, 352 N.W.2d 907 (1984).

There is nothing in the present case to indicate that the intent of the Legislature would be defeated by construing the word

"may" in the portion of § 39-669.09 cited in the majority opinion in its ordinary, permissive, and discretionary sense. In fact, the appearance of the word in close proximity with the word "shall" in § 39-669.09 leaves but one possible conclusion: that a licensee who must submit to either a blood or urine test under § 39-669.08(4) has discretionary power, granted by the Legislature in § 39-669.09, to select, or refrain from selecting, which of the two alternative test samples he or she will provide.

As noted by the majority, a refusal to submit to a chemical test occurs within the meaning of the implied consent law when the licensee, after being asked to submit to a test, so conducts himself or herself as to justify a reasonable person in the requesting officer's position in believing that the licensee understood that he or she was being asked to submit to a test and manifested an unwillingness to take it.

Beerbohm's actions manifested no unwillingness to take a test; he, in effect, said, "I'll take any test you want to give me," thereby leaving it to the officer to choose whatever test the officer found more convenient. To hold that under such a circumstance Beerbohm refused to take either a blood or urine test flies in the face of both logic and the relevant statutory language.

While I concede that the holding of the majority has the virtue of making the administration of §§ 39-669.08(4) and 39-669.09 easier, it does so at the expense of the plain meaning of the words used by the Legislature and violates the very rules of statutory construction upon which the rationale of the majority opinion rests. If the Legislature did not mean what it said, it is within its province to change its words so as to say what it does mean. This court, however, possesses no license to invade the Legislature's bailiwick, which is precisely what it has done.

Accordingly, I would reverse.