STATE OF NEBRASKA, APPELLEE, V. JERRELL CODY, APPELLANT.
459 N.W.2d 195

Filed August 10, 1990.   No. 89-475.

Dennis R. Keefe, Lancaster County Public Defender, and Sean J. Brennan for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Defendant, Jerrell Cody, appeals from his convictions of burglary and escape, after trial to a jury in the Lancaster County District Court. Defendant was sentenced to terms of imprisonment for not less than 18 months nor more than 3 years on the burglary charge and not less than 6 months nor more than a year on the escape charge, the sentences to be served consecutively. We affirm.

The escape charge was filed because subsequent to his arrest for a burglary on June 27, 1988, the defendant ran away from the arresting officer at the door of the police station. Defendant was later recaptured. This matter was submitted to the jury, and the defendant was convicted of the crime of escape. No issue is

made on this appeal concerning the validity of that sentence.

On this appeal, defendant assigns the following errors:

[1.] The district court erred in permitting a police officer, who promised to not arrest defendant if he would agree to make a statement, to testify at trial regarding statements made pursuant to that promise.

[2.] The district court erred in permitting a police office[r], who initiated contact with defendant for the purpose of obtaining statements after defendant had asserted his right to counsel, to testify at trial regarding statements made by defendant.

[3.] The district court erred in permitting a police officer, who arrested defendant in his home without a warrant, to testify regarding statements and evidence obtained from defendant as a result of the illegal arrest.

The record shows the following: On June 22, 1988, the Lincoln Police Department received an anonymous telephone call linking the defendant to a burglary and explosion occurring at a church on June 21. Police Officer James Spanel was assigned to investigate the lead. On June 22, Spanel, after unsuccessful attempts to locate the defendant earlier that evening, talked to the defendant's wife outside the defendant's apartment residence. The defendant's wife gave Officer Spanel permission to search the apartment for the defendant. While Spanel was in the apartment, the telephone rang, and defendant's wife indicated that the defendant was on the phone and would speak to the officer.

The record shows the following aspects of the conversation: Officer Spanel identified himself as a police officer and stated that he was investigating a serious matter based upon an anonymous tip. Spanel indicated that he needed to ask the defendant some questions. Spanel testified that the defendant wanted to know what the investigation was about and whether he was going to be arrested. Spanel testified that he responded by stating, "I'm not going to arrest you tonight, but I can't promise you that later on." Spanel testified that the defendant agreed to talk with him and that the defendant returned to the apartment 5 minutes after the phone conversation ended.

When the defendant arrived at his apartment, Spanel told

him that an anonymous phone call linked him to a burglary and explosion at a church, and Spanel asked the defendant if he had any burns on him. The defendant showed Spanel several burn injuries and stated that he received the injuries when the carburetor on a van backfired as he was attempting to prime it. The defendant made other statements about his whereabouts during the times in question and about the clothes he was wearing when he was burned.

Officer Spanel testified that he then asked the defendant if he would be willing to take a polygraph test and that the defendant replied that "he would like to consult with an attorney before giving a response to that question." Spanel testified that his questioning ended at that point.

Spanel testified that the defendant appeared to make his statements voluntarily and intelligently, that he did not induce the defendant to make statements to him by threat or promise, and that the defendant appreciated the situation and was not mentally confused or intoxicated.

Spanel relayed his findings to Police Officer Richard Doetker, who was in charge of the investigation of the burglary and explosion at the church. On June 23, Doetker contacted the defendant at the defendant's apartment. The defendant agreed to answer more questions and allowed Doetker to photograph his burns.

On June 27, Officer Doetker went to the defendant's apartment once again. Officer Doetker did not have an arrest warrant for the defendant, but apparently he intended to arrest him. There was no response to his knocks on the defendant's apartment door. When Doetker returned to his unmarked police vehicle, he received information that the defendant had just called another officer and told the officer that he had returned from an out-of-town trip. Doetker then requested the police dispatcher to call the defendant and to ask him to come outside his apartment and to talk to the officer. The dispatcher placed the call. Doetker testified that the defendant came outside and asked, "What's up?" Doetker then asked him to remove his shoes, and when the defendant refused, he was placed under arrest. Defendant was given his *Miranda* warnings, and he subsequently made statements to Officer

Doetker. Additional photographs were taken of the defendant.

The defendant moved "for an order suppressing at trial the use of all evidence obtained from defendant's residence during a search thereof as well as any statements made by defendant to law enforcement officers during their investigation of this case." At the hearing on the motion, the parties agreed that the hearing would also serve as a *Jackson v. Denno* hearing. See, generally, *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). Doetker and the defendant testified at the hearing. During closing arguments on the motion to suppress, the defense counsel conceded that the statements to Spanel made on June 22 and the statements to Doetker on June 23 were not suppressible. Defense counsel argued that the arrest on June 27 was a warrantless seizure inside the defendant's home and that any statements or evidence obtained as a result of the arrest should be suppressed.

The trial court stated that the testimony indicated that the police dispatcher had requested, and not ordered, the defendant to come out of his residence, and the court found beyond a reasonable doubt that the arrest was legal.

During the trial, another *Jackson v. Denno* hearing was held to determine whether defendant's statements to Officer Spanel on June 22 were voluntary. After hearing testimony from Officer Spanel, defense counsel argued that the statements to Officer Spanel were not voluntary because they were induced by Spanel's promise not to arrest the defendant. The State responded that Spanel only stated his present intention not to arrest the defendant that evening and that Spanel's statement was not a beneficial inducement to the defendant's statements that evening. The trial court ruled that in view of the fact that the defendant was not under arrest at the time the statements were made, the defendant's statements to Officer Spanel were freely, voluntarily, and intelligently made.

At the same hearing, defense counsel also raised the argument that in view of Spanel's testimony that the defendant asked to speak with a lawyer on June 22, the statements to Officer Doetker on June 23 were inadmissible because that "was an assertion of the Sixth Amendment right which had to be honored before any further contact or further questioning

could take place." The trial court noted that the defendant's request for counsel was with reference to whether he would take the polygraph test and that the subsequent statements to Officer Doetker on June 23 were admissible. The court stated that it would go outside the presence of the jury once again, if necessary, if Officer Doetker "gets to any conversation that he had with the defendant."

Defense counsel did not object during the trial itself to Officer Spanel's testimony regarding statements the defendant made to him on June 22.

Subsequently, during the testimony of Officer Doetker at trial, defense counsel objected to the admission of any statements made by the defendant to Officer Doetker and stated, "As grounds for my objections, I would rely on the arguments that I made to the Court during the motion to suppress evidence." The court responded that at the hearing on the motion to suppress it ruled that the statements made to Doetker were admissible. The court inquired as to whether the prearrest statements should be treated differently from the statements made after arrest. Defense counsel responded that he wanted a standing objection, but that he would raise the objection again when the officer moved to postarrest statements. The trial court suggested that defense counsel simply state that he renewed his objections made previously, so that another bench conference would not be necessary. Defense counsel then reaffirmed that the objection was based upon his motion to suppress evidence and statements. The trial court then overruled the objection for "reasons dictated into the record."

Defense counsel objected to the admission of photographs taken of the defendant's burns by Officer Doetker on June 23, because they were the "fruit of an illegal confrontation." Defense counsel's argument continued, "So, for the grounds I raised at the time of the motion to suppress, I object to these exhibits." The trial court overruled the objection "for the reasons given at the conclusion of the hearing on the motion to suppress."

Defense counsel later renewed his previous objections to all evidence emanating from the allegedly unlawful arrest. The

objections were overruled.

With regard to the first assignment of error, concerning the June 22 statements made to Spanel, we note that we stated in *State v. Pointer*, 224 Neb. 892, 895, 402 N.W.2d 268, 271 (1987), "[I]n a criminal trial, after a pretrial hearing and order which overrules a defendant's motion to suppress his statement, the defendant must object at trial to the receipt of the statement in order to preserve the question for review on appeal." We see no reason why the same rule should not apply where there has been a previous ruling on the voluntariness of the statement in a *Jackson v. Denno* hearing but no objection to the evidence in the trial itself. In this case, although the voluntariness of the defendant's statements to Officer Spanel was considered during a *Jackson v. Denno* hearing, there was no objection to Officer Spanel's testimony on the trial record, and therefore the issue pertaining to the admissibility of the statements obtained by Officer Spanel from the defendant cannot be the predicate for an assignment of prejudicial error on appeal.

Moreover, although the State bears the burden of proof in a suppression hearing to show by a preponderance of the evidence that an accused's statements were voluntarily made, whether an officer has made a promise to induce an accused's statement is a question of fact to be determined by the trial court. *State v. Hayes*, 229 Neb. 53, 424 N.W.2d 624 (1988). Such a factual decision will not be overturned unless clearly wrong. *Id.* With respect to the factual finding of the trial court in the context of this case, we do not find that the trial court was clearly wrong in determining that the statements the defendant made to Officer Spanel were voluntarily made. The trial court could reasonably find that Spanel's statement merely conveyed the officer's present intention not to arrest the defendant that evening, that the statement did not amount to a promise not to arrest the defendant, and that the statement did not overcome the defendant's will to resist.

The State also contends that the voluntariness objection to the admission of the defendant's statements to Officer Spanel was waived by defendant's failure to challenge the statements before the commencement of the trial, pursuant to Neb. Rev. Stat. § 29-115 (Reissue 1989). We need not address the issue,

because we have determined that there was no objection at trial and because the statement was voluntary. As discussed above, the first assignment of error is without merit.

The second assignment of error relates to the inadmissibility of the defendant's statements to Officer Doetker on June 23, which were made after the defendant stated that he would like to speak to an attorney before determining whether to take a polygraph test. The State argues that the defendant waived this objection, pursuant to § 29-115; that the objection was not properly raised at trial; and that the defendant's statement with reference to the polygraph test does not render his statements on June 23 inadmissible.

Rather than addressing whether the voluntariness objections to the statements the defendant made to Officer Doetker on June 23 were waived and whether defense counsel properly referenced his objections in order to preserve the admissibility issues on appeal, we shall focus on the voluntariness of the statements the defendant made to Officer Doetker on June 23.

The defendant does not contend that his freedom was restrained by the Lincoln police on June 23. In other words, the defendant was not in custody on June 23, and neither his fifth amendment right to remain silent nor his sixth amendment right to counsel had attached. See, generally, *Michigan v. Jackson*, 475 U.S. 625, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986); *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981); *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Consequently, the issue is whether the defendant's statements on June 23 were voluntary within the due process clause. See, *State v. Hayes, supra*; *State v. McCurry*, 228 Neb. 841, 424 N.W.2d 364 (1988). We examine the totality of the circumstances to determine whether the State has satisfied its burden to prove the defendant's statement was the product of a rational intellect and a free will. *McCurry, supra*. Also, we will not overturn a factual finding of the trial court unless it is clearly wrong. *Id*. The defendant was not subject to the inherently coercive environment of a custodial interrogation. His request for an attorney on June 22 was unambiguously given with respect to the polygraph test and was clearly not an

indication that he wanted all questioning to cease. There is no evidence that he resisted the contact with Officer Doetker on June 23. Considering the totality of the circumstances, we find that the evidence indicates that the defendant freely, voluntarily, and intelligently responded to Officer Doetker on June 23. The second assignment of error is without merit.

In his third assignment of error, the defendant contends that his arrest was an unreasonable and warrantless seizure in violation of the fourth amendment to the U.S. Constitution. The basis of his argument is that his arrest took place in his home when the police dispatcher telephoned and requested that he go outside and talk to Officer Doetker. As acknowledged in *State v. Marcotte*, 233 Neb. 533, 537, 446 N.W.2d 228, 232 (1989), " '[a] warrantless arrest of an individual is a species of seizure which, the courts have ruled, must be reasonable.' " The facts in *Marcotte* are similar to the facts in this case, and the reasoning of that case applies here. The trial court's determination that the defendant was not ordered to go outside, and impliedly that the defendant did not perceive that he was under arrest, and freely and voluntarily went out to meet Officer Doetker is not clearly wrong. A felony had been committed, and the officer had reasonable cause to believe that the defendant was responsible. See Neb. Rev. Stat. § 29-404.02 (Reissue 1989). The manner of the defendant's arrest was not unreasonable as a matter of law, and the third assignment of error is without merit.

The judgment and sentences of the defendant are affirmed.

AFFIRMED.